UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 2:16cr66 |
| | ) | |
| CLAYTON PRESSLEY | ) | Sentencing Date: January 12, 2017 |
| (AKA "CLAYTON A. PRESSLEY) | ) | |
| (AKA "CLAYTON PRESSLEY III")) | | |
| (AKA "ANTHONY D. STARK), | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S POSITION ON SENTENCING

The United States of America, through the undersigned attorneys, respectfully submits this Position on Sentencing in this case. The United States concurs with the findings of the Presentence Investigation Report (PSR), and it further concurs that the Defendant's applicable Total Offense Level is 15 and that his Criminal History Category is I. At this time, the government declines to move for an additional one-level reduction in Offense Level for Acceptance of Responsibility. Therefore, the Defendant's advisory Sentencing Guidelines Range is 12-18 months of imprisonment, plus 24 months of consecutive imprisonment. The government respectfully recommends that the Court impose a sentence of 42 months of imprisonment and 5 years of supervised release.

### I. INTRODUCTION

The Defendant, CLAYTON PRESSLEY, a decorated senior enlisted member of the United States Navy, used the authority of his position to victimize the people who worked for him and then use their identities to commit a felony, bank fraud.

1

The Defendant was an active duty senior enlisted member of the United States Navy, stationed at an Explosive Ordnance Disposal (EOD) command at Joint Expeditionary Base Little Creek-Fort Story in Virginia Beach, Virginia. His duties at his military command included supervising numerous more junior military members. One of his collateral duties was to serve as Command Action Casualty Officer (CACO). As such, he would be charged with contacting and notifying a military member's family in the event of a casualty.

During the course of his employment with his command in Virginia Beach, Virginia, the Defendant took and removed identification documents belonging to members of his military command, including J.B. and N.H. He had access to their identification documents due to his position as CACO.

On or about July 18, 2015, the Defendant submitted an online application for a loan in the amount of $6,500 from Pioneer Mid-Country Bank, a bank with deposits insured by the Federal Deposit Insurance Corporation (FDIC), utilizing means of identification of J.B., one of the Defendant's subordinates at his military command. The loan was approved. The Defendant utilized the loan proceeds for his own benefit.

On or about August 6, 2015, the Defendant submitted an online application for a loan in the amount of $7,500 from Pioneer Mid-Country Bank, a bank with deposits insured by the Federal Deposit Insurance Corporation (FDIC), utilizing means of identification of J.B., the same subordinate from the Defendant's military command. The loan was approved. The Defendant utilized the loan proceeds for his own benefit.

J.B. became aware that his identity had been stolen when Pioneer Mid-Country Bank reached out to him regarding payments for the loans that had been secured in his name. J.B. made the decision to inform agents with the Naval Criminal Investigative Service (NCIS) that his

identity had been stolen. Before doing so, J.B. informed his immediate supervisor, the Defendant, of the identity theft. On August 12, 2015, J.B. went to report the crime to NCIS. The Defendant accompanied him.

One week later, on or about August 19, 2015, the Defendant submitted an online application for a loan in the amount of $10,000 from Pioneer Mid-Country Bank, a bank with deposits insured by the Federal Deposit Insurance Corporation (FDIC), utilizing means of identification of N.H., another individual who previously worked as one of the Defendant's subordinates at his military command. The loan was approved. The Defendant utilized the loan proceeds for his own benefit. J.B. became aware that his identity had been stolen when he received communications from Pioneer Mid-Country Bank regarding the loan. In January 2016, J.B. reported to NCIS that his identity had been stolen.

Through subsequent investigative action, agents with NCIS were able to trace the loans taken out in both J.B. and N.H.'s names back to the Defendant, PRESSLEY. On April 14, 2016, agents with the NCIS executed a federal search warrant on the Defendant's residence in Chesapeake, Virginia. At the residence, the Defendant's home office, the agents found copies of identification documents belonging to J.B. and N.H. They also found a stack of identification documents belonging to at least nine other individuals, at least seven of which were the Defendant's subordinates at his military command. Several sets of identification documents, including those belonging to N.H., had been painstakingly organized into "TARGET CHECK LIST[S]" with personal identifiers, passwords, security question answers, and documents arranged in a way that would allow the Defendant to create accounts at financial institutions in these individuals' names. To be clear, each set of documents and information was clearly physically labeled as "TARGET CHECK LIST."

## II. PROCEDURAL HISTORY

On July 6, 2016, a Federal Grand Jury for the Eastern District of Virginia, Norfolk Division, returned a Superseding Indictment, charging the Defendant with: one count of Bank Fraud, three counts of Aggravated Identity Theft, one count of Unlawful Transfer of Identification Documents, one count of Unlawful Possession of Identification Documents, and one count of Willful Violation of a Defense Security Regulation. On September 22, 2016, the Defendant pleaded guilty to Counts One and Two of the Superseding Indictment, charging him with Bank Fraud in violation of 18 U.S.C. § 1344 and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(1)(a).

## III. ARGUMENT

### A. Loss Amount

Per the Probation Office's Presentence Investigation Report, the Defendant has been attributed with a loss amount of $24,000, which represents the amount of money that he successfully acquired by utilizing J.B. and N.H.'s identities.

### B. A Sentence of 42 Months of Imprisonment is Appropriate, Considering the Advisory Nature of the Guidelines and the 18 U.S.C. § 3553(a) Factors.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court made clear that sentencing courts should consult [the Sentencing] Guidelines and take them into account when sentencing." 543 U.S. at 264; *see also United States v. Biheiri*, 356 F.Supp.2d 589, 593 (2005) ("Justice Breyer's majority opinion in [*Booker*] sensibly teaches that the Sentencing Guidelines must still be taken into account pursuant to 18 U.S.C. § 3553(a) in fashioning an appropriate sentence."). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker,* 543 U.S. at 264 (quoting 28

4

U.S.C. § 991(b)(1)(B)). The Fourth Circuit has provided the following guidance in the wake of *Booker*:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) and (B); *Biheiri*, 356 F.Supp.2d at 594.

Section 3553(a) requires a sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the Defendant, as well as the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the Defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

*1. Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote the Respect for Law, and to Provide Just Punishment for the Offense (Section 3553(a)(2)(A))*

A sentence of 42 months of imprisonment is necessary to reflect the seriousness of the Defendant's crimes, to provide just punishment for that crime and to promote respect for the law. The Defendant has pleaded guilty to identity theft and bank fraud. The Defendant was a trusted senior enlisted member of a military command. Instead of acting in a manner in keeping with the leadership position he held, he surreptitiously used his authority to steal identities and then money for personal gain. By using his public position for personal gain, he corrupted the

5

immense trust and respect that his position as a senior military member carries. Further, he victimized individuals who trusted him, forcing them to work to clear their credit histories of the loans he fraudulently took out in their names.

2. *Need to Afford Adequate Deterrence and Protect Public from Further Crimes (Section 3553(a)(2)(B)-(C))*

Imposing a sentence of 42 months of imprisonment for the Defendant would serve the important purpose of deterring future individuals within the district and beyond from engaging in similar misconduct. General deterrence has its greatest impact in white-collar cases, like this one, because these crimes are committed in a more rational and calculated manner than sudden crimes of passion or opportunity. *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (quoting *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)). The defense submits in their sentencing brief that the Defendant "was struggling with mental health issues" and that should be considered as a mitigating factor as the Court determines its sentence. Defense Sentencing Position Paper, page 3. Although the Defendant may well have struggled with mental health issues during the course of his adult life and military career, he committed the crimes of conviction in a calculated, pre-meditated, deliberate manner that indicates that he had the mental wherewithal to victimize his subordinates in furtherance of his felonious activity. A sentence of 42 months of imprisonment in this case will send a message to both military members and civilians in positions of public authority that they are expected to act in a manner in accordance with the trust that has been bestowed upon them, and that there are real consequences for betraying that trust.

3. *Avoiding Unwarranted Sentence Disparities (Section 3553(a)(6))*

This Defendant is the only defendant to be sentenced in this case. The case is comparable to that of *United States v. Donte Demus*, 2:14cr43, in which the defendant was

6

sentenced to 54 months of imprisonment for wire fraud and aggravated identity theft. In that case, in which the defendant conspired to steal inmates' identities and file false tax returns in their names, the defendant had both a higher offense level and criminal history category than PRESSLEY. However, certain aggravators, that were not present in the *Demus* case are present in the instant case, justify a similar sentence for PRESSLEY. First, PRESSLEY abused a sacrosanct position of trust by stealing his sailors' identities to commit bank fraud. In addition, although PRESSLEY did not have a criminal record at the time of his crimes, he did have stable employment and substantial benefits. Nothing justifies, excuses, or explains his actions. PRESSLEY simply squandered his opportunities by choosing to commit his crimes.

4. *Need to Provide Restitution (Section 3553(a)(7))*

Restitution is mandatory in this case. The Defendant is required to enter a Restitution Judgment to Pioneer Services in the amount of $19,509.02.

5. *The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant (Section 3553(a)(1))*

It is undeniable that the Defendant has served his country for many years, at times in dire circumstances. His administrative separation from the U.S. Navy is currently pending. However, the question before the Court today is not whether the Defendant served honorably for the majority of his time in the U.S. Navy. The Court is faced with determining a sentence that is sufficient but not greater than necessary given that, after reaching a leadership position within the U.S. Navy, the Defendant used his position of authority to steal his subordinates' identities. This Defendant held an awesome trust and respect reserved for operators within the U.S. military who have served their country honorably. He betrayed that trust and sullied that respect. We respectfully request that the Court impose a serious sentence of imprisonment in this case in

7

order to deter other defendants with similar personal history and characteristics from betraying the public trust in the future.

## IV. CONCLUSION

Based on the foregoing, the United States requests that this Court impose a term of imprisonment of 42 months of imprisonment, and 5 years of supervised release, a special assessment of $200, and mandatory restitution in the amount of $19,509.02.

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

By: /s/ Alyssa K. Nichol
Alyssa K. Nichol
Special Assistant United States Attorney
Stephen W. Haynie
Assistant United States Attorney
Attorneys for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Telephone: (757) 441-3554
Facsimile: (757) 441-3205
E-mail: Alyssa.Nichol@usdoj.gov
Stephen.haynie@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to:

                Bruce Christopher Sams, Esquire
                      Attorney for Defendant
                          208 Plume Street
                             Suite 210
                      Norfolk, Virginia 23510
                          (757) 627 3999

*/s/ Alyssa K. Nichol*
Alyssa K. Nichol
Special Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Telephone: (757) 441-3554
Facsimile: (757) 441-3205
E-mail: Alyssa.Nichol@usdoj.gov